DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant Clair Wenger ("Husband") appeals from the judgment of the Wayne County Court of Common Pleas which finalized the parties' division of property. We affirm in part and modify in part.
 I {¶ 2} Husband and Plaintiff-Appellee Sandra Wenger ("Wife") have been involved in proceedings related to their divorce since May 29, 2001. Following the trial court's initial division of the parties' property, the matter was appealed to this Court. We affirmed the trial court's ruling in part, reversed it in part, and remanded the matter for further proceedings. See Wenger v. Wenger, 9th Dist. No. *Page 2 
02CA0065, 2003-Ohio-5790 ("Wenger I"). The trial court then made several attempts to comply with our remand order. Thereafter, this Court dismissed multiple appeals because the trial court's attempts on remand did not result in final, appealable orders. See Wenger v. Wenger, 9th Dist. No. 05CA0057, 2006-Ohio-3330 ("Wenger II"); Wenger v. Wenger, 9th Dist. No. 06CA0061 (dismissed by journal entry) ("Wenger III"). On December 6, 2006, following our second dismissal, the trial court entered a judgment which ordered Husband to pay Wife $200,000 to equalize the parties' property distribution. Husband was ordered to make payment within 90 days and to pay interest at a rate of 7.25% until the judgment was satisfied. Husband timely appealed the trial court's judgment, raising eight assignments of error for review.
 II Assignment of Error Number One "THE TRIAL COURT ERRED BY DENYING APPELLANT THE OPPORTUNITY TO PRESENT ADDITIONAL EVIDENCE AFTER THIS COURT'S DISMISSAL OF THE APPEAL IDENTIFIED AS CASE NO. 05-CA-0057."
 Assignment of Error Number Two "THE TRIAL COURT ERRED BY DENYING APPELLANT THE OPPORTUNITY TO PRESENT ADDITIONAL EVIDENCE AFTER THIS COURT'S DISMISSAL OF THE APPEAL IDENTIFIED AS CASE NO. 06-CA-0061."
 Assignment of Error Number Three *Page 3 "THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO VACATE, MOTION FOR NEW TRIAL, MOTION FOR RELIEF FROM JUDGMENT AND MOTION FOR RECONSIDERATION AFTER ISSUING ITS SUA SPONTE ORDER DATED DECEMBER 6, 2006."
 Assignment of Error Number Four "THE TRIAL COURT ERRED AS A MATTER OF LAW BY FINDING THAT THE DOCTRINE OF THE `LAW OF THE CASE' PRECLUDED THE TRIAL COURT FROM DETERMINING ON REMAND FROM CASE NO. 02-CA-0065 WHETHER APPELLANT HAD THE ABILITY TO BORROW MONEY TO PAY APPELLEE ADDITIONAL SUMS OF MONEY AT THE TIME OF THE INITIAL TRIAL."
 Assignment of Error Number Five "THE TRIAL COURT ERRED BY FINDING, AT THE REMAND HEARING AFTER THIS COURT'S DECISION IN CASE NO. 02-CA-0065, APPELLANT HAD THE ABILITY TO BORROW MONEY IN ORDER TO EQUALIZE THE PROPERTY DIVISION AT THE TIME OF TRIAL."
 Assignment of Error Number Six "THE TRIAL COURT ERRED BY FAILING TO REEXAMINE ALL OF THE ECONOMIC ISSUES AND CONSIDER ALL OF THE EVIDENCE THAT EXISTED IN THIS ENTIRE RECORD AFTER EACH REMAND ORDER THAT WAS ISSUED BY THIS COURT OF APPEALS."
 Assignment of Error Number Seven "THE TRIAL COURT ERRED BY ISSUING NEW DIVISION OF PROPERTY ORDERS, AFTER THE VARIOUS REMAND ORDERS FROM THIS COURT, CAUSING APPELLANT TO BORROW MONEY TO PAY APPELLEE ANY ADDITIONAL SUMS OF MONEY AND, SPECIFICALLY, THE ADDITIONAL SUM OF $200,000." *Page 4 
 {¶ 3} In his brief, Husband states as follows with respect to his first seven assignments of error.
 "Appellant will address these assignments of error together. They address, generally, the same issues involved with the Trial Court's various decisions after the remand orders from this Court."
Consequently, we will address Husband's assignments of error together.
 {¶ 4} In his first seven assignments of error, Husband argues that the trial court erred in failing to consider additional evidence following the first remand by this Court and our subsequent dismissals. Specifically, Husband claims error as a result of the trial court's: 1) refusal to hear new evidence after dismissals by this Court; 2) denial of his motion to vacate; 3) denial of his motion for a new trial; 4) denial of his motion for reconsideration; 5) use of the law of the case doctrine; 6) finding of fact regarding his ability to borrow money; 7) failure to consider all of the evidence presented by the parties; and 8) issuance of a new division of property. Upon review, we find no error in the trial court's decision.
 {¶ 5} While Husband details these issues in his captioned assignments of error, he does not provide a standard of review or any specific argument in support of any of them. Instead, Husband's arguments effectively raise two propositions. First, Husband argues that he should have been permitted additional hearings to present new evidence. Second, Husband asserts that the trial court's division of property was erroneous. We find no merit in either contention. *Page 5 
Additional Hearings {¶ 6} On February 1, 2005, following the remand in Wenger I, the trial court held an evidentiary hearing to resolve the issues cited by this Court. Prior to this hearing, both parties submitted trial briefs. On March 1, 2005, the magistrate issued his decision. The trial court adopted the magistrate's decision the following day. Thereafter, both parties filed objections to the magistrate's decision. A series of replies and surreplies then followed. Eventually, the trial court overruled the parties' objections and adhered to its prior decision. This Court then twice dismissed appeals because the trial court's judgment was not definitive with respect to the parties' rights and obligations and therefore was not a final, appealable order. SeeWenger II; Wenger III.
 {¶ 7} On appeal, Husband argues that after each of our dismissals, the trial court should have held additional hearings and heard new evidence. Husband provides no legal support for this conclusion. Moreover, this Court's dismissals did not mandate that the trial court conduct additional hearings. Instead, we determined that the form of the trial court's entries was defective. Specifically, this Court found that the trial court could not permit Husband to choose from three different options to repay Wife, but instead had to impose a definite obligation.
 {¶ 8} Prior to our dismissals, the trial court heard extensive evidence regarding Husband's financial situation. Consequently, it is unclear why any further hearings would be needed for the trial court to fulfill its duty. In effect, *Page 6 
upon learning that his arguments had been rejected, Husband sought to present new evidence to the trial court. We have found no authority that would require the trial court to permit Husband to do so. Accordingly, we find no error in the trial court's refusal to hear new evidence.
Division of Property {¶ 9} In divorce proceedings, the trial court must divide marital property in an equitable manner. R.C. 3105.171(C)(1). A trial court is vested with broad discretion when fashioning this division of property.Bisker v. Bisker (1994), 69 Ohio St.3d 608, 609. Accordingly, absent an abuse of discretion, a trial court's division of marital property will be upheld by a reviewing court. West v. West, (Mar. 13, 2002) 9th Dist. No. 01CA0045, at *6.
 {¶ 10} R.C. 3105.171(F) details nine factors to consider when dividing the marital property. Those factors are as follows:
 "(1) The duration of the marriage;
 "(2) The assets and liabilities of the spouses;
 "(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
 "(4) The liquidity of the property to be distributed;
 "(5) The economic desirability of retaining intact an asset or an interest in an asset;
 "(6) The tax consequences of the property division upon the respective awards to be made to each spouse; *Page 7 
 "(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 "(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 "(9) Any other factor that the court expressly finds to be relevant and equitable." R.C. 3105.171(F)(1)-(9).
Husband asserts that the trial court erroneously determined that a division of property that split the parties' assets evenly was equitable.[1] Specifically, Husband argues that the trial court erred in determining that he was capable of paying Wife $200,000 without incurring significant financial hardship. We find no error in the trial court's decision.
 {¶ 11} Husband argues that his inability to receive a loan to pay Wife the amount needed to equalize their marital assets requires a conclusion that he not be required to make such a payment. Alternatively, Husband argues that if he is required to make such a payment, the trial court must consider the costs associated in liquidating Husband's assets in order to make that payment. As we find that Husband's initial premise that he is unable to gain a loan is unsupported by the record, we do not reach his second argument. *Page 8 
 {¶ 12} At its evidentiary hearing, the trial court heard testimony from Husband and from Chuck Henley, a loan officer at Farm Credit Services ("FCS"). During his examination, Henley testified as follows. FCS is primarily in the business of making loans for farm purposes. Many of these loans are for terms of three to five years because they are secured by farm assets which rapidly depreciate. Henley stated that based upon his knowledge of Husband's financial records, he did not believe that FCS would issue Husband a $200,000 loan for non-farm purposes. During cross-examination, Henley admitted that Husband had never applied for such a loan with FCS. When asked about Husband's ability to repay such a loan, Henley responded that he "would have to be a good manager to pay that much debt back[.]"
 {¶ 13} Husband also testified on his own behalf. During his testimony, Husband admitted that he had not applied for a loan from any bank as it related to this $200,000 payment. Husband also admitted that it was feasible for him to restructure his current debt but that he felt extending the life of his debt was inequitable because it would delay his retirement. At the same time, Husband admitted that in the year 2004, after the initial divorce decree in this matter, Husband took out loans in an amount of $215,000 to improve and continue to operate the farm.
 {¶ 14} Based upon the facts presented in the parties' initial divorce proceedings and the evidence introduced at the remand hearing, we cannot find *Page 9 
that the trial court abused its discretion when it ordered Husband to pay wife $200,000. During the initial proceedings, Husband sought to retain the family farm. During his testimony, Husband recognized that the value of the farm meant that he would be forced to forego any claim to other marital assets. Consequently, Husband chose to receive property which had a low level of liquidity. Through his choice, Husband received property with an undisputed value of $1,100,000 (the property was worth $1,800,000 but had a debt of roughly $700,000), while Wife received property with an undisputed value of $700,000. Husband then sought to use his choice to receive this non-liquid property to assert that the division of property should be unequal. However, as the evidence revealed, Husband is not unable to borrow against this property. He never formally applied for a loan. Moreover, when examined on the issue, he simply stated that he did not want to take out a new loan or restructure his old debt because such a decision would delay his retirement.
 {¶ 15} We cannot find Husband's position to be equitable. Under Husband's scenario, he is able to choose the marital property he will retain, receive assets worth roughly $400,000 more than Wife's assets, and then rely on his choice to deprive Wife of an equitable division of property because that division may require Husband to work for a longer period of time. Instead, we find the trial court's division of property to be equitable. Through the trial court's division, Husband is able to maintain the family farm he sought and Wife receives *Page 10 
a comparable amount of assets. Contrary to Husband's assertions, there is no evidence that Husband is unable to borrow money, rather the record reflects that he is unwilling to do so.
 {¶ 16} Based upon the above, we find that Husband's first seven assignments of error lack merit.
 Assignment of Error Number Eight "THE TRIAL COURT ERRED BY REQUIRING APPELLANT TO PAY [A] `DISCOUNTED' INTEREST AT A RATE OF 7.25% PER ANNUM."
 {¶ 17} In his final assignment of error, Husband argues that the trial court erred when it ordered him to pay 7.25% interest on the $200,000 award to Wife until it was paid in full. We agree, albeit for different reasons.
 {¶ 18} R.C. 1343.03(A) states that "when money becomes due and payable upon * * * all judgments, decrees, and orders of any judicial tribunal for the payment of money * * *, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code." "An order distributing marital assets from one party to another has the force of a money judgment, and the recipient is entitled to interest on any amount due and owing under the order but unpaid."Woloch v. Foster (1994), 98 Ohio App.3d 806, 812. In Woloch, the divorce decree provided that a certain amount of money was to be paid "as soon as possible" to one of the parties as her portion of a marital asset. Id. The court in Woloch, the Second District, determined that this amount that was *Page 11 
to be paid "as soon as possible" was subject to the then statutory 10% interest rate. Id. Moreover, in Clymer v. Clymer (Sept. 21, 2000), 10th Dist. No. 99AP-924, the Tenth District clarified that statutory interest is only applicable to divorce decree obligations if those obligations have been reduced to a lump sum judgment. See, also, Rizzen v.Spaman (1995), 106 Ohio App.3d 95, 111; Dunbar v. Dunbar (1994),68 Ohio St.3d 369, 370 (noting that R.C. 1343.03 is not applicable to a child support arrearage that had not been reduced to a lump sum judgment.)
 {¶ 19} In the instant matter, Husband's obligation has been reduced to a lump sum judgment. Consequently, Wife is entitled to the statutory interest as determined under R.C. 5703.47. As this judgment was issued in 2006, Wife is entitled to interest in the amount of 6%.[2]
 {¶ 20} To the extent that Husband has argued that he is entitled to a "discounted" rate, we find no merit in such a contention. The interest rate on judgments is set by statute and there is no authority for a trial court to deviate from that amount.
 {¶ 21} Husband's final assignment of error, therefore, has merit. The trial court's entry is hereby modified to reflect that Wife's judgment will accrue interest at 6% per annum rather than 7.25%. *Page 12 
 III {¶ 22} Husband's first seven assignments of error are overruled. Husband's eighth assignment is sustained as detailed above. The judgment of the Wayne County Court of Common Pleas is affirmed in part and modified in part as stated herein.
Judgment affirmed in part, and modified in part.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30. *Page 13 
Costs taxed to both parties equally.
CARR, J., DICKINSON, J., CONCUR
[1] We note that the trial court appears to have mistakenly believed that this Court required an even split of the parties' assets. This Court previously stated that we were "not suggesting that an equitable division of marital property must result in a 50-50 split[.]" WengerI at ¶ 23. As detailed infra, any error in interpreting our prior decision was harmless as the resulting division of property was equitable as required by law.
[2] Seehttp://tax.ohio.gov/divisions/ohio_individual/individual/interest_rates.stm
(noting that the statutory interest rate for 2006 was 6%). *Page 1